[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal of a decision of the Zoning Board of Appeals of the Town of Ridgefield (hereinafter "Board") to sustain the Zoning Enforcement Officer's (hereinafter "ZEO") denial of an application for a zoning permit made by the plaintiff, William T. Peatt, Jr.
The plaintiff is the owner of a parcel of property approximately 0.6 acres in size, located at 202 Mamanasco Road in Ridgefield. (Return of Record ("ROR")) Exhibit L, Transcript of June 3, 1991 hearing, p. 51.) The property is located in the R-A residential zone, which requires a minimum lot size of one acre and permits a single detached house for not more than one family. (ROR Exhibit L, p. 51; Ridgefield Zoning Regulations, Secs. 401.0(A)(1) and 403.0(A).) The plaintiff's parcel contains three structures, one of which (hereinafter "House #1") is the subject of the instant appeal. (ROR Exhibit A, appeal from decision of ZEO, dated May 13, 1991.)
The plaintiff made an application to the ZEO in August CT Page 4189 of 1989 for a zoning permit in order to renovate House #1. (ROR Exhibit L, p. 51.) The proposed renovations would not increase the size of House #1 in any way. Id. The plaintiff's application was denied, and he subsequently appealed that denial to the Board which sustained the decision of the ZEO. (ROR Exhibit L, p. 52.) The plaintiff filed an appeal of that decision, Peatt v. Ridgefield Zoning Board of Appeals, Docket No. CV 89-29 95 95 S, in this court.
On January 21, 1991, this court (West, J.) issued a memorandum of decision in that appeal. The court found that the existence of three houses on the plaintiff's lot was a valid pre-existing nonconforming use. Peatt v. Ridgefield Zoning Board of Appeals, supra, 12. Concerning House #1, the court stated that "[c]learly, the record establishes the plaintiff's right to continue using the structure residentially." Id. The court sustained the plaintiff's appeal and remanded the case back to the Board for the sole determination of whether the plaintiff had abandoned the residential use of House #1. The court directed the Board to proceed in accordance with Public Act 89-277, Sec. 1 (since codified in General Statutes, Sec. 8-2), which requires inquiry into the landowner's intent to abandon a nonconforming use. Id., 19.
The plaintiff's application was reopened by the Board and a duly noticed public hearing was commenced on June 3, 1991. (ROR Exhibit L, p. 49; ROR Exhibit C, Certificate of Publication in Ridgefield Press, May 23, 1991 and May 30, 1991.) The hearing was continued to June 17, 1991. (ROR Exhibit L, p. 119; ROR Exhibit E, Certificate of Publication in Ridgefield Press, June 6, 1991 and June 13, 1991.)
On July 1, 1991, the Board voted three to two to sustain the decision of the ZEO to deny the plaintiff a zoning permit. (ROR Exhibit L, pp. 170-171; ROR Exhibit G, Letter of Decision, dated July 8, 1991.) In support of that action, the Board stated the following reasons:
1. While General Statutes, Sec. 8-2 does not allow a set time to be used as a limit, the basis of the statute has not changed, and the continued failure to use leads to an abandonment of that use (citing West Hartford v. Willetts,125 Conn. 266, 5 A.2d 13 (1939).)
2. The use of the building as a store, house, and accessory building is well established. To abandon any one use in favor of another would expand the nonconformity on the property. The plaintiff applied for a total change of use to CT Page 4190 a residence, which is an expansion of a nonconformity.
3. Intent to abandon House #1 as a residence can be inferred, because for the four years from 1982 to 1986, the property was not maintained nor was there any apparent attempt to rent it as a residence.
4. There is no taking, because there are two other residences on the property. (ROR Exhibit G.) Both members who voted to reverse the decision of the ZEO stated that the plaintiff had not abandoned the residential use of House #1. Id.
Notice of the Board's decision was published in the Ridgefield Press on July 5, 1991. (ROR Exhibit H, Certificate of Publication, August 5, 1991.) The plaintiff filed this action on July 22, 1991, alleging that the Board acted illegally, arbitrarily, and in abuse of its discretion in sustaining the action of the ZEO, because the record contains no evidence that the plaintiff intended to abandon the residential use of House #1.
"The question of aggrievement is essentially one of standing." DiBonaventura v. Zoning Board of Appeals,24 Conn. App. 369, 373, 588 A.2d 244 (1991). Aggrievement is a prerequisite to maintaining an appeal. Smith v. Planning 
Zoning Board, 203 Conn. 317, 321, 524 A.2d 1128 (1987). An owner of the subject property is considered aggrieved and is entitled to maintain an appeal. Bossert Corporation v. Norwalk, 157 Conn. 279, 285, 253 A.2d 39 (1968).
The parties have stipulated that the plaintiff at all relevant times was and is the owner of the property that is the subject of this appeal. Therefore, the court finds that the plaintiff is aggrieved and is entitled to bring this appeal.
An aggrieved party may take an appeal to the Superior Court within fifteen (15) days from the date when notice of such decision was published in a newspaper. General Statutes, Sec. 8-8 (b). In the instant case, notice of the Board's decision was published in the Ridgefield Press on July 5, 1991. (ROR Exhibit H.) The plaintiff commenced this appeal by service of process upon the chairman of the Board and the Ridgefield Town Clerk on July 17, 1991. Therefore, the court finds that the plaintiff's appeal is timely.
When a zoning board of appeals acts to determine "the reasonableness of . . . [a] decision of the zoning enforcement officer," it acts "administratively in a CT Page 4191 quasi- judicial capacity. . . ." Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 514, 264 A.2d 552 (1969). "[T]he board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152,543 A.2d 1339 (1988). "Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record." Primerica v. Planning Zoning Commission,211 Conn. 85, 96, 558 A.2d 646 (1989). "The action of the commission should be sustained if even one of the stated reasons is sufficient to support it." Id. The plaintiff has the burden of proof to demonstrate that the board's actions were improper. Adolphson v. Zoning Board of Appeals,205 Conn. 703, 707, 535 A.2d 799 (1988).
The plaintiff argues that there was no evidence before the Board which would indicate that he intended to abandon the residential use of House #1 and, as a result, the Board's action in sustaining the decision of the ZEO was illegal, arbitrary and in abuse of its discretion.
General Statutes, Sec. 8-2 provides, in relevant part, that zoning regulations "shall not provide for the termination of any nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use." In determining whether a nonconforming use has been abandoned, "evidence of an intent by the owner permanently to cease the use is required, and we have held that the mere fact of nonuser [sic] for a period is insufficient to constitute an abandonment." Dubitzky v. Liquor Control Commission,160 Conn. 120, 126, 273 A.2d 876 (1970). Intent to abandon a nonconforming use must be "evidenced by overt acts or failure to act sufficient to constitute proof of that intent. Id., 125.
The first reason given by the Board for its decision is that despite the language of the statute, the continued failure to use constitutes an abandonment of that use. In favor of this proposition, the Board cites West Hartford v. Willetts, supra. Clearly, that is a misstatement of the law. The statute unambiguously states that a nonconforming use shall not be terminated "solely as a result of nonuse . . . without regard to the intent of the owner to maintain that use." General Statutes, Sec. 8-2. Furthermore, the case cited does not support the Board's position. That case was a declaratory judgment action involving the type of strict time limit for abandonment that General Statutes, Sec.8-2 now prohibits, and contrary to the Board's CT Page 4192 interpretation, states that "temporary nonoccupancy of the premises or interruption or suspension of a nonconforming use without substitution of a conforming use or conduct significant of abandonment would not work a termination of the right to resume the former . . . ." (Emphasis added.) West Hartford v. Willetts, supra, 272, citing Darien v. Webb, 115 Conn. 581, 586, 162 A. 690 (1932). Therefore, since this reason ignores the plaintiff's intent to abandon and is based solely on nonuse, it is contrary to the mandate of General Statutes, Sec. 8-2 and must fail.
The Board also states that House #1 had a history of being used for both residential and commercial purposes, and that a termination of the commercial use in favor of the residential use would expand the nonconformity on the property. However, this reasoning completely ignores the court's direction that on remand the Board "should proceed on plaintiff's application for zoning permit in accordance with the mandates of Public Act 89-277, Sec. 1." Peatt v. Ridgefield Zoning Board of Appeals, supra, 19. Further, this reason is not relevant to the plaintiff's intent to abandon the residential use of House #1. Although the issue of expansion of a nonconforming use was not before the Board, the continuing confusion surrounding this issue since the inception of these proceedings merits a brief discussion.
The Board has failed to recognize the "distinction between a nonconforming building or structure and a nonconforming use of land," and that such a distinction is "genuine and may be critical." (Citation omitted.) Petruzzi v. Zoning Board of Appeals, 176 Conn. 479, 481
n. 2, 408 A.2d 243 (1979). This distinction is made in the Ridgefield Zoning Regulations. (Ridgefield Zoning Regulations, Secs. 304.0(2) and 304.0(3).) While the existence of three structures on the plaintiff's parcel is a nonconforming use of land, the use to which they are put relates to the nonconforming use of structures. See Ebner v. Zoning Board of Appeals, 3 CSCR 854 (September 30, 1988, Pickett, J.). The subject property lies in a residential zone. (ROR Exhibit L, p. 51.) Therefore, terminating the commercial use of House #1 for the purpose of making it a completely residential use would not expand the nonconforming use of the structure, but would instead eliminate that nonconformity.
The Board further reasons that the intent to abandon the residential use of House #1 can be inferred, because during the years from 1982 to 1986, the property was not maintained nor was there any apparent attempt to rent it as a residence. Clearly, this conclusion was arbitrarily made in CT Page 4193 contravention of the great weight of evidence presented at the hearings.
At the June 3, 1991 public hearing, the plaintiff stated that he never intended to abandon the residential use of House #1, and in fact intended to continue that use. (ROR Exhibit L, p. 58.) The plaintiff also stated that during the time period in question, he sought tenants to rent House #1 by placing a sign on the property. (ROR Exhibit L, pp. 58, 65, 66.) It was noted by the plaintiff and others that House #1 has continuously been serviced with electricity, heat, and operating plumbing with hot and cold running water. (ROR Exhibit L, pp. 68, 69, 74, 101, 103, 104.) The plaintiff stated that he has performed all maintenance on House #1. (ROR Exhibit L, p. 69.) Furthermore, there was evidence at the continued hearing that House #1 is taxed by the town as a residence, that the taxes have always been paid, and that the plaintiff has, during the time period in question, always maintained residential homeowner's insurance for House #1. (ROR Exhibit L, pp. 120, 127-130, 151-152; ROR Exhibit T, Letter from Assessor with attachments, dated May 22, 1991; ROR Exhibit V, Nationwide Insurance Dwelling Policies for years 1982-1986.) A close review of the record indicates nothing that would contradict any of the above testimony or evidence.
While the intent to abandon a nonconforming use may be inferred, Blum v. Lisbon Leasing Corporation, Inc.,173 Conn. 175, 182, 377 A.2d 280 (1977), in the instant case, there was no evidence from which such an inference could be made. The uncontroverted facts before the Board evidence no intent on the part of the plaintiff to abandon the residential use of House #1. Due to the absence of evidence to contradict that presented by the plaintiff, the Board has failed to accomplish the "near-impossibility of establishing an intent to abandon a non-conforming use against an owner's assertion to the contrary." T. Tondro, Connecticut Land Use Regulation, 1983 Supplement, p. 38.
Finally, the Board states that no taking results from this action, because there are two other residences on the property. However, the taking issue was not before the Board on remand and was never raised at the public hearing. Therefore, this reason is irrelevant to the determination of plaintiff's intent to abandon the residential use of House #1, and does not support the Board's decision.
Since neither the evidence nor the Board's reasons based thereon support the conclusion that the plaintiff intended to abandon the residential use of House #1, the CT Page 4194 decision of the Board to sustain the ZEO's action in denying the plaintiff a zoning permit is illegal, arbitrary, and an abuse of its discretion.
Accordingly, the plaintiff's appeal is sustained.
WEST, J.