[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The following facts are taken from the return of record (hereinafter "ROR").
This is an appeal, pursuant to Connecticut General Statutes14-57 and 4-183, from the decision of the Zoning Board of Appeals of the Town of Hamden, denying the plaintiff's request for a certificate of approval of location for its property. The plaintiff, Amoco Oil Co. ("Amoco"), owns property located at 903/905 Whitney Avenue in Hamden near the New Haven town line. (ROR #8, #29). The property, located in an R-1 residence zone, has been owned and operated or leased and operated as a gasoline service station for over thirty-five years. (ROR #7, #29 ). The property became a nonconforming use with the adoption of the zoning regulations currently in effect. (ROR #29 ).
On January 24, 1992, the plaintiff filed an application with the defendant for a certificate of approval of location for a general repairer's license. (ROR #4). A public hearing concerning the plaintiff's application was held on February 20, 1992, and continued to May 21, 1992. (ROR #1, #2). On June 4, 1992, the Board voted 4-0, with one member abstaining, to deny the plaintiff's application. (ROR #3). The plaintiff appeals CT Page 5467 from this decision.
General Statutes 14-57 allows a person aggrieved by an action of the Zoning Board of Appeals denying a certificate of approval of location to appeal the decision of the Board to the Superior Court. "Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal." Light Rigging Co. v. Department of Public Utility Control, 219 Conn. 168, 172,592 A.2d 386 (1991). The fundamental test for determining aggrievement has two parts.
 [F]irst, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision.
On March 31, 1993, the plaintiff filed in court a certified copy of a quitclaim deed showing the plaintiff as the owner of the subject property. The return of record also contains an application for a general repairer's license submitted by the plaintiff to the department of motor vehicles. The plaintiff correctly alleges that without board approval it cannot obtain a general repairer's license to enable it to resume use of the service station for motor vehicle repairs, a use that had existed prior to 1983 or 1989. See Conn. General Statutes 14-57. The plaintiff claims, therefore, that its ability to use the property has been curtailed by the decision of the board. See DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369,375-76, 588 A.2d 244 (1991) (applicant aggrieved because denial of certificate of approval deprived him of ability to seek license). Accordingly, the plaintiff has satisfied both parts of the test for aggrievement.
In considering an application for a certificate of approval of location, the zoning board of appeals "is not functioning under either the municipal zoning ordinances or the zoning CT Page 5468 statutes." Mason v. Board of Zoning Appeals, 143 Conn. 634, 637,124 A.2d 920 (1956). The board functions as a special statutory agent of the State pursuant to Conn. General Statutes 14-54. New Haven College, Inc. v. Zoning Board of Appeals, 154 Conn. 540,542, 227 A.2d 427 (1967); Mason v. Board of Zoning Appeals, supra; Vicino v. Zoning Board of Appeals, 28 Conn. App. 500, 504,611 A.2d 444 (1992).
In reviewing the decision of the zoning board of appeals, the court is governed by the Uniform Administrative Procedure Act, General Statutes 4-183(j). Vicino v. Zoning Board of Appeals, supra, 505. The court cannot substitute its judgment for that of the board. Id. The determination of whether the plaintiff's property is suitable for a motor vehicle repair business "is an administrative matter which cannot be vested in the judiciary under the guise of an appeal. As on all appeals from strictly administrative agencies, the court [can] go no further than to decide whether the action of the [board] in refusing to issue the certificate of approval, was illegal, arbitrary or an abuse of discretion." (Citations omitted.) Charchenko v. Kelley, 140 Conn. 210, 213, 98 A.2d 915 (1953). See also General Statutes 4-183(j); Griffin Hospital v. Commission on Hospitals Health Care, 200 Conn. 489, 496,512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S.Ct. 781,93 L.Ed.2d 819 (1986). The trial court must determine whether the board's judgment "is based on reliable, probative, and substantive evidence on the whole record." Vicino v. Zoning Board of Appeals, supra, 507.
To grant a certificate of approval of location, the zoning board of appeals must determine that the location is "suitable for the business intended, with due consideration to its location in reference to schools, churches, theaters, traffic conditions, width of highway, and effect on public travel. . . ." Conn. General Statutes 14-55. To determine whether the location is suitable, the zoning board of appeals must determine whether the proposed use is in accordance with the zoning of the property. Raymond v. Zoning Board of Appeals, 164 Conn. 85, 88-89, 318 A.2d 119
(1972). "Obtaining a certificate of approval. . .is not a zoning matter, and the use of premises for [general automobile repair] in a zone in which such a use is prohibited or under conditions and circumstances which would be in violation of the zoning regulations would not be `suitable'. . .even though other criteria specified in the statute were met." Clark Heating Oil, Inc. v. Zoning Board of Appeals, 159 Conn. 234, 239, 268 A.2d 381 (1970). CT Page 5469 The zoning board of appeals found that the property was not suitable for a motor vehicle repair business because the gas station was a nonconforming use and the previous repair business at the station had been discontinued. (ROR #3).
The Hamden Zoning Regulations state:
 No nonconforming use which has been discontinued shall thereafter be resumed. The term discontinued as used herein, shall mean the voluntary discontinuance of a use, when accompanied by an intent not to reestablish such use. Any one of the following shall constitute prima facie evidence of intent to discontinue:
 a. Any positive act indicating such intent, such as approval sought and granted for a less nonconforming use; or
 b. Any conscious failure to take all necessary steps to resume the nonconforming use with reasonable dispatch in the circumstances; or
 c. In the case of a structure or of a structure and land in combination, discontinuance of the nonconforming use for six consecutive months, or for a total of 18 months during any three year period. . . .
(Emphasis in original). Hamden Zoning Regulations, Article III 323(a)-(c). Additionally, Conn. General Statutes 8-2 provides that "regulations shall not provide for the termination of any nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use."
Discontinuance of a nonconforming use has been held to be equivalent in meaning to abandonment. Dubitzky v. Liquor Control Commission, 160 Conn. 120, 125-26, 273 A.2d 876 (1970). The mere fact of nonuse for a period of time is insufficient to constitute an abandonment; evidence of an intent by the owner to cease the CT Page 5470 activity is required. Id., 126. This intent may be "evidenced by overt acts or failure to act sufficient to constitute proof of intent." Id., 125. "A use. . .is not discontinued. . .by a mere temporary suspension for a reasonable time, for reasons beyond the owner's control, where there exists a manifested intention on a part of the owner to resume the nonconforming use as soon as a tenant can be obtained." State ex rel Eramo v. Payne, 127 Conn. 239,241-42, 16 A.2d 286 (1940); Magnano v. Zoning Board of Appeals, 188 Conn. 225, 228, 449 A.2d 148 (1982). The court has found that this intent requirement was satisfied where a package store owner temporarily was without a tenant, but was actively seeking a new tenant and advertising the premises as a location for a package store. State ex rel Eramo v. Payne, supra. Similarly, when a tenant ceased operating the premises as a drug store with a druggist's liquor permit, the court did not find that the use had been discontinued because the owner, prior to the cessation of the use, had expressed his intent to resume the use as soon as the tenant's lease expired. Dubitzky v. Liquor Control Commission, supra.
The zoning board of appeals considered the following evidence. General motor vehicle repairs on the premises ceased in late 1988 or early 1989 when the gas station changed dealers. (ROR #30, #31). The current dealer leased the station from Amoco with the expectation that the service bays would be converted to a convenience store. (ROR #31). The dealer did not attempt to continue or obtain a general repairer's license because a license was not required for the types of motor vehicle maintenance he intended to do. (ROR #23, dealer's affidavit). Amoco vigorously pursued the convenience store option and did not inquire about the status of the general repairer's license when it leased the premises to the current dealer in July 1989, when it applied for the variance to convert the service bays to a convenience store in late 1990, or at any time during the period when the application for the variance was being appealed. (ROR #30, #31). In December, 1991, when the Appellate Court denied its petition for certification of the denial of the variance, Amoco finally inquired about the status of the repairer's license. (ROR #30, #31). Amoco claimed to be applying for the license because the dealer, who would usually apply, could not afford to apply. (ROR #31).
The zoning board of appeals also heard statements from the business development representative and the service representative for Amoco. Both men stated that Amoco never intended to CT Page 5471 give up the general repair activity on the premises. (ROR #31). When asked by a board member whether either of them had the authority to make decisions about continuing the use, neither responded. (ROR #31). The service representative stated that he worked closely with the dealer and was involved in planning the changes to a convenience store. (ROR #31).
Amoco claims that the statements of the two Amoco representatives that it did not intend to discontinue using the premises for motor vehicle repairs is sufficient to overcome the prima facie evidence of discontinuance, namely nonuse for a period of approximately 2-1/2 to 3 years. Amoco also claims that its intent, not the intent of the dealer, is controlling and that Amoco, by its contract with the dealer, had no control over the day-to-day operations of the business.
Amoco argues that because a general repairer's license had been issued for these premises in 1978, it should be renewed now. There is nothing in the record, however, to indicate whether the property was in the same zone in 1978 as it is under the current version of the Hamden zoning regulations, adopted on September 14, 1982. Furthermore, the issuance of a general repairer's license in 1978 occurred while a limited repairer's license was in effect, and had been in effect for over twenty years, not following a period of nonuse.
The intent of the owner, not the lessee, should be considered in determining whether the use has been discontinued. Dubitzky v. Liquor Control Commission, supra, 125; State ex rel Eramo v. Payne, supra, 242. In reaching its decision on Amoco's intent, the zoning board of appeals considered the evidence presented at the hearings and the activities on the site. The record reflects the following evidence on Amoco's intent to discontinue the use. Amoco sought a variance to convert the service area of the station to a convenience store. Amoco was aware that its current tenant was interested in a convenience store and not general repairs. Although it was aware that both the gas station and repair activity were nonconforming uses, Amoco did not check on the existence of the repairer's license, or take any steps to reinstate the license for over two years after it had expired. Amoco claimed that it had no control over the day-to-day operation of the gas station and, therefore, that it could not apply for a license in its own name, and yet Amoco is now applying for a certificate of approval and general repairer's license in its own name. Two Amoco representatives CT Page 5472 claim that Amoco had no intent to discontinue the use of the premises for repairs, but did not provide the zoning board of appeals with any authority to support their statements. It was not unreasonable for the zoning board of appeals to conclude that Amoco did not intend to reestablish the use of the premises for general motor vehicle repairs. Accordingly, the decision of the zoning board of appeals is not illegal, arbitrary or an abuse of discretion. Therefore, the appeal is dismissed.
Donald W. Celotto, Judge
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 5474