JOHN V. MAGNANO ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF WESTBROOK ET AL.

PETERS, HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

Argued June 11—decision released August 31, 1982

*William F. Gallagher,* with whom, on the brief, were *Robert L. Hurney* and *Roger B. Calistro,* for the appellant (defendant Kenneth J. Ward, Jr.).

*James D. Reardon,* for the appellees (plaintiffs).

SHEA, J. The plaintiffs own property in a residential zone on the Boston Post Road in Westbrook across the street from a lot upon which an Arco station was in operation when Westbrook enacted its zoning ordinances. The original owner ceased operating the gas station on June 28, 1977, and, after actively trying to sell the property for more than one year, finally sold it to Kenneth Ward, Jr., the individual defendant. Ward was granted a building permit with the approval of the zoning administrator in March, 1979, to alter the interior of the former gas station in order to convert it into a fast food restaurant. The plaintiffs appealed to the Westbrook zoning board of appeals, claiming that the issuance of the building permit was contrary to zoning regulations §§ 1101 (1) (b) and 1101 (1) (d).[1] Their contention that the period in excess of one

[1] "Section 1101 1. . . . Any lawful use of a building or land existing at the effective date of these regulations may be continued subject to the following conditions . . .

(b) Changes. A nonconforming use may be changed to a nonconforming use of the same or more restricted classification, but such use shall not then be permitted to change back to a less restricted classification. . . .

(d) Discontinuance. If a nonconforming use of a nonresidential building or land is discontinued for a period of one year, or if a nonconforming use of a building or land has been changed to a conforming use, the nonconforming use shall not again be permitted."

year during which no gas was sold constituted a "discontinuance," extinguishing the nonconforming use, was rejected by the zoning board. The plaintiffs' second argument, that a fast food restaurant is more obnoxious than a gas station, and inherently a use of a less restricted classification, was also not accepted by the zoning board, which affirmed the zoning administrator's decision to issue a building permit to Ward.[2] Upon the plaintiffs' appeal to the Superior Court, judgment was rendered for them upon the ground that the zoning board "acted illegally, arbitrarily and in abuse of its discretion." The court expressly found "that the nonconforming use of the subject premises was discontinued for a period of more than one year and under the provisions of Section 1101 (1) (d) of the Zoning Ordinances of the Town of Westbrook, therefore, said nonconforming use was extinguished and cannot be revived." The defendant Ward, upon the granting of certification, appealed to this court.

I

The defendant argues that the trial court erred in ruling as a matter of law that the cessation of the operation of the gas station constituted a "discontinuance" under zoning regulation § 1101 (1) (d) sufficient to extinguish the nonconforming use. We agree that the court's interpretation of "discontinuance" was mistaken.

---

[2] The decision of the zoning board explicitly states that the majority of the zoning board agreed with the decision of the zoning enforcement officer on the ground "that the subject property has actively been for sale as a non-conforming use, even though it had not been used as a gas station since June 28, 1977. . . . The Board could not determine whether the uses were lesser or greater, Gas station VS Restaurant."

The word "discontinued" in ordinances prohibiting the resumption of a nonconforming use which has been discontinued for a specified period has been held to contain the element of intention and to require more than mere suspension or temporary cessation of use. *Point O'Woods Assn., Inc.* v. *Zoning Board of Appeals,* 178 Conn. 364, 369, 423 A.2d 90 (1979); *Blum* v. *Lisbon Leasing Corporation,* 173 Conn. 175, 181–82, 377 A.2d 280 (1977); *Dubitzky* v. *Liquor Control Commission,* 160 Conn. 120, 125–26, 273 A.2d 876 (1970); *State ex rel. Eramo* v. *Payne,* 127 Conn. 239, 241, 16 A.2d 286 (1940). It has been considered equivalent in meaning to " 'abandoned,' and evidence of an intent by the owner permanently to cease the use [has been] required . . . ." *Dubitzky* v. *Liquor Control Commission,* supra. In a case in which the owner had unsuccessfully tried to lease the premises during the specified period this court held that "[a] use . . . is not discontinued . . . by a mere temporary suspension for a reasonable time, for reasons beyond the owner's control, where there exists a manifested intention on the part of the owner to resume the nonconforming use as soon as a tenant can be obtained." *State ex rel. Eramo* v. *Payne,* supra, 241–42; see also *Point O'Woods Assn., Inc.* v. *Zoning Board of Appeals,* supra; *West Hartford* v. *Willetts,* 125 Conn. 266, 273, 5 A.2d 13 (1939). Although a town may be able to fashion its zoning ordinance so as to make the cessation of use for a certain period alone a ground for extinguishing a nonconforming use,[3] Westbrook has not done

---

[3] "Some courts have upheld zoning ordinances containing a provision that a non-conforming use shall terminate and may not be resumed if non-use thereof shall have existed for a specified period, where the specified period seemed reasonable." 4 Rathkopf, Zoning and Planning (4th Ed.) c. 61, § 3 pp. 61–64; see, e.g., *Canada's Tavern, Inc.* v. *Glen Echo,* 260 Md. 206, 271 A.2d 664 (1970); *Sun*

so, and we see no reason not to interpret "discontinued" in the Westbrook regulations as we have previously.

In the present case there was unrefuted testimony that the owner was engaged in marketing the property with its valuable nonconforming use as an asset; see *Petruzzi* v. *Zoning Board Appeals,* 176 Conn. 479, 484, 408 A.2d 243 (1979) ; throughout the period following the day gas was last sold there.[4] The zoning board's conclusion that the nonconforming use had not been discontinued was therefore neither unfair nor based on an invalid reason. See *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 654, 427 A.2d 1346 (1980). The trial court erred in reversing the zoning board's decision that the nonconforming use was extant.

---

*Oil Co. of Pennsylvania* v. *Board of Zoning Appeals,* 57 App. Div. 2d 627, 393 N.Y.S. 2d 760 (1977); see also dictum in *State ex rel. Eramo* v. *Payne,* 127 Conn. 239, 241, 16 A.2d 286 (1940). Other courts have required an intent to abandon, claiming that absent such a requirement, the ordinance is an arbitrary deprivation of property. See, e.g., *A.T. & G., Inc.* v. *Zoning Board of Review,* 113 R.I. 458, 322 A.2d 294 (1974).

[4] The plaintiffs claim that no credible evidence that the property was continuously, actively offered for sale was presented to the zoning board. They do concede, and the transcript reflects, that Stanley Rapacki, the zoning administrator, testified that "since [the gas station operator] had left, the property had been vacant, and the Neidlinger family had been trying to sell it, and possibly rent it out. But, there's been an awful lot of activity; an awful lot of inquiries on that property." Since no real estate agent testified and Rapacki's testimony was hearsay, the plaintiffs contend that there was insubstantial evidence to support the zoning board's conclusion. Their argument lacks merit, however, because "proceedings before zoning and planning boards and commissions are informal and are conducted without regard to the strict rules of evidence . . . ." See *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 207, 355 A.2d 21 (1974). Since a zoning board may act upon facts known to it even though they are not produced at the hearing; *Parsons* v. *Board of Zoning Appeals,* 140 Conn. 290, 292, 99 A.2d 149 (1953); a fortiori there was sufficient evidence of active attempts to sell the property in this case.

## II

The plaintiffs argue that the Superior Court's judgment reversing the zoning board can be affirmed, notwithstanding a decision by this court that the nonconforming use still existed, on the alternate ground that the use of the property as a fast food restaurant is less restrictive than its nonconforming use as a filling station, and therefore, violates zoning regulation § 1101 (1) (b). The defendant contends that the plaintiffs' failure to cross appeal bars our consideration of this alternate ground, which did not serve as a basis for the trial court's decision. Practice Book § 3012 (a) provides in relevant part that "[i]f the appellee wishes to present for review alternate grounds upon which the judgment may be affirmed . . . he may file a preliminary statement of issues within fourteen days from the filing of the appeal." A cross appeal is not necessary nor would it be appropriate in this situation in which judgment was rendered in the appellees' favor and the trial court never reached the issue urged as an alternate ground for affirmance in this court. See Practice Book §§ 3003, 3000. The record shows that the plaintiffs timely filed a statement of alternate grounds for affirming the judgment. We therefore must address the second issue raised, whether use of the property as a fast food restaurant falls within a more restricted classification than its use as a gas station.

In order to decide this issue, it is necessary to determine what is a "classification" in the Westbrook zoning regulations.[5] As both parties point

[5] The plaintiffs argue that the real issue is whether a fast food restaurant is a use more "obnoxious"; see *Stern* v. *Zoning Board of Appeals,* 140 Conn. 241, 244, 99 A.2d 130 (1953); or more "objectionable"; see *Guilford* v. *Landon,* 146 Conn. 178, 182, 148 A.2d 551

out, "classification" is not explicitly defined. Article II of the regulations, however, is entitled "Classification of Districts" and § 200 therein sets forth nine "classes" of zoning districts: five residential, of varying densities; commercial; commercial boating; industrial; and turnpike interchange commercial. Since the "commercial district" class is the most restricted allowing a use as a gas station,[6] it follows that any use permitted in a "commercial district" is of the same classification as is a gas station. Among the uses permitted in a "commercial district," other than a motor vehicle service station, is a retail store or personal service shop including barber, tailor, beauty salon, shoe repair, restaurant, tavern, package store and similar uses. Zoning Regulations, Westbrook, Article VIII, § 800 (2). Since

(1959); than a gas station. Their reliance on those cases is misplaced, however, since the ordinances involved therein are clearly distinguishable from § 1101 (1) (b) of the Westbrook zoning regulations. In *Stern* v. *Zoning Board of Appeals,* supra, the relevant ordinance provided that an existing nonconforming use could be changed to a "similar use." This court, in interpreting the word "similar" in the context of the purpose of the regulation, decided that the change could not be to a more obnoxious use. In *Guilford* v. *Landon,* supra, the ordinance provided that "[n]o non-conforming use may be changed except to a conforming use or . . . to another non-conforming use *no more objectionable* in character." (Emphasis added.) Since § 1101 (1) (b) is written in terms of degrees of classification rather than of obnoxiousness or objectionability, this court's pronouncements in those contexts are not binding here.

[6] Article VIII, § 800 (9) permits motor vehicle service stations in two portions of the present commercial district bounded as follows:
"(a) That portion of the present Commercial District which is bounded:
Easterly: By the Old Saybrook-Westbrook Town Line;
Westerly: By a prolongation northwesterly of Chapman Beach Road;
"(b) That portion of the present Commercial District which is bounded:
Westerly: By the Clinton-Westbrook Town Line;
Easterly: By a line which is 500 feet westerly from the west bank of the Menunketesuck River."

a restaurant is a permissible use in a commercial district, it is a use of the same classification as a gas station. The conclusion follows that the issuance of the building permit was not contrary to regulation § 1101 (1) (b). The zoning board did not, therefore, act illegally in upholding the zoning administrator's decision to issue the permit to the defendant.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal in accordance with this opinion.

In this opinion the other judges concurred.